UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Valerie Richardson,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Liberty Mutual Personal Insurance Company,<br><br>　　　　　　Defendant. | Civil No. 3:25-CV-00724 (SVN)<br><br><br>September 26, 2025 |

## RULING ON PLAINTIFF'S MOTON TO COMPEL

Plaintiff, Valerie Richardson, moves this Court to enter an order compelling certain discovery from Defendant Liberty Mutual Personal Insurance Company ("Liberty") pursuant to Fed. R. Civ. P. 37. For the reasons that follow, Plaintiff's Motion to Compel is GRANTED in part and MOOT in part. ECF No. 34.

### I.　　LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Information is "relevant" if it "(a) has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in

determining the action." Fed. R. Evid. 401; *see In re PE Corp. Secs. Litig.*, 221 F.R.D. 20, 23 (D. Conn. 2003). The burden of demonstrating relevance is on the party seeking discovery. *Ayuso v. Butkiewieus*, No. 3:17CV00776 (AWT), 2019 WL 1110794, at *2 (D. Conn. Mar. 11, 2019). "Because the Federal Rules . . . are to be construed liberally in favor of discovery, . . . the party resisting discovery bears the burden of showing why discovery should be denied." *In re Aggrenox Antitrust Litig.,* No. 3:14-CV-572 (SRU), 2017 WL 5885664, at *1 (D. Conn. Nov. 29, 2017).

II.     BACKGROUND

The following allegations are contained in the Parties' 26(f) Report and the Amended Complaint and are set forth as background. ECF Nos. 21, 25.

On July 8, 2022, a vehicle driven by James J. Celentano ("Celentano"), a covered person under an insurance policy issued by Liberty, struck the rear of Plaintiff's motor vehicle suddenly and without warning. Amend. Compl., ECF No. 25, ¶¶ 4, 5. Due to the collision, Plaintiff suffered permanent physical injuries to her back, right shoulder, and other parts of her body. *Id.*, ¶¶ 6, 10. On April 24, 2023, Plaintiff commenced a civil action in Connecticut Superior Court against Celentano ("the *Richardson* Action"), asserting, *inter alia*, that as a result of Celentano's negligence, Plaintiff suffered permanent injuries. *See id*, ¶¶ 9,10. The next day, on April 25, 2023, a Liberty employee appeared as counsel for Celentano in the *Richardson* Action and eventually filed an Answer to the Complaint on July 25, 2023, on Celentano's behalf. *See id.*, ¶¶ 11, 13.

After the close of the pleadings and the jury claim, on November 8, 2023, Plaintiff's counsel in the *Richardson* Action filed an Offer of Compromise ("OC") for $25,000, the limit of Liberty's insurance policy covering Celentano. *See id.*, ¶¶ 15, 16. By operation of Connecticut law, an OC is a time-limited settlement offer that is deemed rejected if it is not accepted within thirty days. *See id.*, ¶ 17 (citing Conn. Gen. Stat. § 52-192a (a) ("If the offer of compromise is not

accepted within thirty days and prior to the rendering of a verdict by the jury or an award by the court, *the offer of compromise shall be considered rejected and not subject to acceptance unless refiled.*") (emphasis added)). Plaintiff alleged that even though liability was reasonably clear and the combined total of economic and non-economic damages would have far exceeded the $25,000 policy limit, Liberty did not accept the OC within the thirty-day statutory period. *See id.*, ¶¶ 19-21, 24. Because Liberty refused the November 2023 OC, its insured was exposed to OC interest at the rate of eight percent, running back to April 2023. *See id.*, ¶¶ 24, 30. Liberty refused to offer its policy limits until March 2024, almost two years after the crash, and more than a full year after the Complaint in the *Richardson* Action had been filed. *See id.*, ¶ 25.

Plaintiff alleges that Liberty engaged in "further bad faith conduct" in the *Richardson* Action. *See id.*, ¶ 26. She alleges, for example, that after Plaintiff indicated that she would not accept Liberty's untimely tender of its policy limit, Liberty sent correspondence to Plaintiff's counsel in the *Richardson* Action, which sought to bully Plaintiff into accepting Liberty's late and insufficient offer, falsely accused Plaintiff's counsel of prolonging the case's resolution, and threatened counsel with sanctions and a grievance. *See id.*, ¶ 26, ECF No. 29, Ex. A.

Liberty continued to refuse to engage in settlement discussions, and ultimately exposed its insured to a judgment totaling $1,585,414.79, along with additional post-judgment interest which continues to run to this day.[1] *See id.*, ¶¶ 30, 31. Pursuant to Connecticut law, post-judgment interest

---

[1] The Court takes judicial notice of the jury verdict finding in favor of Plaintiff on Counts One and Two and award of economic and non-economic damages in the amount of $688,848.57, and award of double damages, totaling $1,377,697.14. *Richardson v. Celentano*, NNH-CV23-6132120-S, Entry No. 143.50 (Conn. Super. Ct. Feb. 20, 2025). On March 18, 2025, Superior Court Judge Matthew E. Frechette granted Plaintiff's Bill of Costs in the amount of $5,657.69. *Id.* at Entry No. 144.10. On the same date, the Judge also entered an order stating, in relevant part, that "[o]n November 8, 2023, the plaintiff filed an Offer of Compromise pursuant to C.G.S. Sec. 52-92a which date was within 18 months of the date the Complaint was filed in Court, April 24, 2023[,]" and awarded interest in the amount of $201,709.96. Judgment entered in favor of plaintiff

3

accrues at a rate of ten percent per year, beginning twenty days after the entry of judgment. *See id,* ¶ 31 (citing Conn. Gen. Stat. § 37-3b(a)). In this case, post-judgment interest at the statutory rate began to run on April 17, 2025, at the rate of $158,541.48 per year, or $434.36 per day. *See id,* ¶ 31.

After the verdict, Liberty sent a check to Plaintiff's counsel for $25,000, as well as an additional check in the amount of about $3,660.27. These checks did not include the full amount of OC interest, and did not include the full sum of costs and attorney's fees ordered by the Superior Court. *See id.,* ¶ 32. Because those checks were woefully insufficient to satisfy the judgment, Plaintiff's trial counsel could not and did not deposit or otherwise negotiate on Plaintiff's behalf. *Id.*

Plaintiff alleges that by engaging in this overall pattern of conduct throughout the evaluation of the Plaintiff's claim against its insured, Liberty repeatedly and improperly acted in a manner seeking to mislead and/or deceive Plaintiff, and her representative, and Celentano.

At Count One, Plaintiff brings a breach of contract claim, pursuant to Conn. Gen. Stat. § 38a-321. *Id.,* ¶¶ 34-44. She alleges, among other things, that Liberty breached its insurance agreement between Liberty and Celentano by: (1) failing to resolve Plaintiff's claim within the limits of its insurance policy; (2) failing to exercise due care in handling the case against its insured; and (3) by failing to resolve Plaintiff's claim against Celentano despite reasonable opportunities to do so. *Id.* at ¶¶ 36-39. She contends that, pursuant to Conn. Gen. Stat. § 38a-321, Plaintiff is subrogated to the insured's rights against Liberty for damages resulting from the breach of contract. *Id.* at ¶ 44 (citing Conn. Gen. Stat. § 38a-321 ("Upon the recovery of a final judgment

---

in the amount of $1,579,407.10, plus attorney's fees in the amount of $350.00 for a total judgment of $1,579,757.10. *Id.* at Entry No. 145.10.

4

against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment")).

Accordingly, she claims Liberty is liable to Plaintiff for the full amount of the judgment in the *Richardson* Action, plus OC interest and costs.

At Count Two, she alleges that Liberty negligently failed to settle a claim on behalf of its insured, and at Count Three she alleges the insurance company acted in bad faith when it failed to settle resulting in Plaintiff receiving a jury verdict far above insured's policy limits, and therefore Liberty is responsible for paying the entire amount of the judgment plus OC interest and costs, pursuant to Conn. Gen. Stat. § 38a-321. *Id.,* ¶¶ 45-69. In Count Four, Plaintiff alleges a claim for breach of fiduciary duty against Liberty, pursuant to Conn. Gen. Stat. § 38a-321. *Id.,* ¶¶ 70-75. At Count Five, Plaintiff alleges that Liberty Mutual has, in both the underlying case and on numerous other occasions with respect to other of its policy holders, violated the Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Unfair Insurance Practices Act ("CUIPA"), pursuant to Conn. Gen. Stat. §§ 38a-21, 38a-815, *et seq,* and 42-110b. *Id.,* ¶¶ 76-88.

Liberty denies any and all claims, including those for any and all damages, made by Plaintiff. ECF No. 21 at 3.

**III. DISCUSSION**

Plaintiff seeks production of all documents withheld pursuant to the attorney-client privilege and/or as confidential information, identified on the July 25, 2025 Privilege Log and on the July 7, 2025 Privilege Log.[2]

*1. ATTORNEY-CLIENT PRIVILEGE*

Plaintiff raises three arguments in response to Liberty's assertion of privilege. First, that Liberty's Privilege Logs are inadequate. ECF No. 40 at 2-4. Second, that Liberty's privilege claims are meritless. ECF No. 40 at 4-7. Last, that Liberty waived any privilege by asserting that it acted in good faith. ECF No. 40 at 7-9.

**a. Adequacy of Defendant's July 7, 2025 and July 25, 2025 Privilege Logs**

Defendant invoked the attorney-client privilege and/or work product protection in a Privilege Log dated July 7, 2025. The July 7, 2025 Privilege Log solely contains entries authored by Christine Friel, Senior Claims Specialist at Liberty and received by the Liberty Mutual Claim File or the Liberty Mutual Claim Notes with the barebones descriptions: "summary of litigation insurance costs", "claim notes regarding litigation strategy", "email communications", and "email communications (w/attachment(s))". ECF No. 34-8 (Ex. G). Liberty concedes that the author of the documents on the July 7 Log, Christine Friel is not an attorney. *See* ECF No. 35-5 at 2 (Ex. D).

Defendant also invoked the attorney-client privilege and/or work product protection in a Privilege Log dated July 25, 2025. The July 25, 2025 Privilege Log contains various entries received by the Liberty Mutual Claim File with the barebones descriptions: "summary of litigation insurance costs", "legal referral request", "email communications", and "email communications

---

[2] As reported by the parties, the issues around Plaintiff's Interrogatory Nos. 3 and 5 and Request for Production No. 6, have been resolved and are rendered moot.

(w/attachment(s))". ECF. No. 34-4 (Ex. C). These entries were authored by various people including: Christine Friel, Liberty Senior Claims Specialist; Tricia Mackey, Liberty Claims Adjuster; Roberta Provencher (unidentified); Alison Fabella (unidentified); Kelly Crosby (Liberty Attorney); Attorney Philip Newbury (Attorney retained by Liberty to represent non-party insured Celentano); Attorney Nicholas Loveland (Attorney retained by Liberty to represent non-party insured Celentano); and Eric Abbott (unidentified). ECF No. 34-1 at 7; ECF No. 34-4 (Ex. C).

"A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Bernstein v. Mafcote, Inc.,* 43 F. Supp. 3d 109, 114 (D. Conn. 2014). To invoke the work-product protection "a party generally must show that the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation." *United States v. Constr. Prods. Rsch., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). "The burden of establishing the applicability of the privilege rests with the party invoking it." *Bernstein*, 43 F. Supp. 3d at 114.

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed-and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); *see also* D. Conn. L. Civ. R. 26(e). The privilege log is intended as the tool to convey the basis for the assertion of the privilege.

Defendant failed to bear its burden of proving that the attorney-client privilege or work product protection applies to the documents listed in the July 7 and July 25, 2025 Privilege Logs.

Defendant's Privilege Logs show minimal compliance with the requirements of D. Conn. L. Civ. R. 26(e) and lack sufficient detail for a meaningful review of the application of the privilege pursuant to Fed. R. Civ. P. 26(b)(5)(A)(ii).

Here, the July 7, 2025 Privilege Log identifies one author, Liberty Senior Claims Specialist Christine Friel, and only one recipient the "Liberty Mutual Claim File". None of the entries identify a single author that is an attorney, ECF No. 34-a at 5. The July 7 Privilege Log provided no information on "whether these were confidential communications between an attorney and a client made in confidence for the purpose of providing legal advice." *Bolorin v. Borrino*, 248 F.R.D. 93, 95 (D. Conn. 2008); *see Bolorin,* 3:06-cv-01295 (AWT), ECF No. 32-2 (defendant's privilege log, entirely failing to claim that any of the withheld communications were legal in nature, and claiming privilege even as to communications with opposing counsel) (citing *Bowne v. AmBase Corp.,* 150 F.R.D. 465, 474 (S.D.N.Y. 1993) (even where a privilege log is submitted, "if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected."); *Constr. Prods. Rsch., Inc*., 73 F.3d at 473 (a privilege log must be sufficiently detailed to permit a judgment as to whether the document is at least potentially protected from disclosure, and other required information should be submitted in the form of affidavits or deposition testimony); *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.,* 240 F.R.D. 44, 47 (D. Conn. 2007) (the burden of proving privilege cannot be met by mere conclusory or *ipse dixit* assertions in unsworn motion papers authored by attorneys but depends on "the production of an adequately detailed privilege log sufficient to enable the demanding party to contest the claim."). Liberty filed no affidavit or deposition testimony to support their claim of privilege. Accordingly, the Court cannot determine from the record before it whether the documents listed on the July 7, 2025 Privilege Log were confidential

communications between an attorney and client made in confidence for the purpose of providing legal advice. Accordingly, Plaintiff's Motion to Compel is GRANTED as to the July 7, 2025 Privilege Log.

Defendant has also failed to bear the burden of proving that the attorney-client privilege and/or work product protection applies to the documents listed on the July 25, 2025 Privilege Log. Several of the authors listed on this privilege log, Roberta Provencher, Alison Fabella, and Eric Abbott, are unidentified, leaving the Court unable to assess the claim of privilege. The documents authored by Liberty Senior Claims Specialist Christine Friel and Liberty Claims Adjuster Tricia Mackey fail for the reasons stated above. Finally, the documents authored by Attorney Philip Newbury and Attorney Nicholas Loveland, counsel retained by Liberty to represent non-party insured Celentano, fail to provide enough detail to enable the Court to determine whether these were confidential communications between an attorney and client made in confidence for the purpose of providing legal advice. Liberty filed no affidavit or deposition testimony to support their claim of privilege. Accordingly, the Court cannot determine from the record before it whether the documents listed on the July 25, 2025 Privilege Log were confidential communications between an attorney and client made in confidence for the purpose of providing legal advice. Accordingly, Plaintiff's Motion to Compel is GRANTED as to the July 25, 2025 Privilege Log.

During the Discovery Status Conference on September 10, 2025, counsel for Defendant sought leave to amend the Privilege Logs to correct the deficiencies identified by Plaintiff and the Court. Defendant's request is denied for the reasons that follow.

b. **Application of the Common Interest Privilege**

Plaintiff argues that Liberty cannot shield documents listed on its privilege logs under the attorney-client privilege and/or work product protection pursuant to the common interest doctrine.

Defendant argues that Plaintiff, as a judgment creditor under Conn. Gen. Stat. § 38a-321, is not entitled to privileged documents concerning the insured's defense, as the privilege is personal to, and can only be waived by, Celentano. Liberty argues that although Plaintiff may "stand in the shoes" of non-party insured Celentano for the purposes of her direct action claim, her status as a judgment creditor does not entitle her to access privileged communications absent a waiver by the Insured. Because no such waiver has occurred, Liberty argues that this Court should deny Plaintiff's Motion to Compel the production of documents withheld on the ground of attorney-client privilege.

It is undisputed that Liberty hired attorneys to represent the insured, Celentano, *not* the insurance company in the *Richardson* Action. Here, Plaintiff is *not* seeking attorney-client communications between the non-party insured Celentano and his attorneys, Mary Ann McCluskey, Philip Newbury, and Nicholas Loveland. Rather, the "vast majority of the documents Liberty seeks to shield are communications made between Celentano's attorneys and Liberty, not Celentano." ECF No. 40 at 5 (emphasis in original). Liberty concedes that, under Connecticut law, "when an insurer retains an attorney in order to defend a suit against an insured, the attorney's *only* allegiance is to the client, the insured." *Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co.,* 249 Conn. 36, 61, 730 A.2d 51, 65 (1999) (emphasis added); *see* ECF No. 38 at 13 (citing *Kenneson v. Eggert*, 176 Conn. App. 296, 314 n. 7. 170 A.3d 14, 25 (2017)). "Indeed, in Connecticut, there is a tripartite relationship among an attorney, an insurance company who pays that attorney, and the defendant who is insured. In that relationship, the attorney's only client is the insured, not the insurance company." *Giammattei v. D'Angelo*, No. NNH CV22-6125811 S, 2023 WL 4073646, at *2 (Conn. Super. Ct. June 15, 2023) (citing *Higgins v. Karp*, 239 Conn. 802, 809-10, 687 A.2d 539 (1997)

("even when an attorney is compensated or expects to be compensated by a liability insurer, his or her duty of loyalty and representation nonetheless remains exclusively with the insured.")).

Liberty asserts, however, that their exists "a common interest among the insured, the attorney and the insurer, and ordinarily the insured's privilege is not waived because of disclosure to the insurer. Pursuant to this 'common interest,' the other involved parties are responsible for protecting the insured's or client's privilege." *Kenneson*, 176 Conn. App. at 314 n.7. The Court finds that Liberty's reliance on *Kenneson* is distinguishable on its facts. *Kenneson* did not involve a bad faith claim where the interests of the insured and the insurer, once common, were no longer aligned. Nor did *Kenneson* specifically involve a bad faith claim by a party standing in the shoes of the insured, pursuant to Conn. Gen. Stat. § 38a-321 (If the insured does not satisfy a judgment "within thirty days after the date when it was rendered such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment.").

Plaintiff argues that even if Liberty could assert a privilege over these communications, she is entitled to these documents. Courts have permitted both insureds, and subrogees standing in the shoes of an insured, to compel the production of communications between an insurance company and an insured's counsel in a bad faith action, even where the insured's counsel simultaneously represented the insurer. ECF No. 40 at 6 (citing *Bourget v. Gov't Metro. Life Ins. Co.,* 48 F.R.D. 29 (D. Conn. 1969)); *see Metro. Life Ins. Co.,* 249 Conn. at 62 ("Moreover, an insured's and insurer's interests immediately become conflicted as soon as the insurer declines to cover the claims.")).

The reasoning in *Bourget v. Gov't Emp. Ins. Co.,* 48 F.R.D. 29, 33 (D. Conn. 1969) is instructive. In *Bourget,* plaintiff obtained a $94,900 verdict in a prior action against the insured, for injuries arising out of a collision between a truck driven by plaintiff and a car driven by the insured. Insurance coverage totaled only $20,000. Plaintiff brought an action against the insurance company to recover the excess over the policy limits arguing that the insurance company "unreasonably and in bad faith failed to settle the prior action within the policy limits and that it is therefore liable to the estate for the excess." *Id.* at 31. Plaintiff filed interrogatories and requests for production seeking to discover facts relevant to settlement negotiations in the prior case. The insurance company raised several objections, "especially those which requested information concerning settlement offers and the reasons for refusing to settle" arguing that the discovery sought by plaintiff was "protected by the attorney-client privilege and work product privileges" *Id.*

Judge Timbers first found that plaintiff made a "sufficient showing of good cause for the disclosure of the documents and information sought." *Id.* at 32. He reasoned that,

> The defendant may be held liable for the full amount of the verdict if plaintiff can establish that the defendant acted in bad faith, in breach of its fiduciary duty to the policy-holder. . . . There are various ways in which a charge of bad faith may be supported, including proof that the insurance carrier's decisions with respect to settlement were based upon inadequate information, as a result of negligent failure to conduct an adequate investigation, or a totally unrealistic evaluation of the likelihood of a successful defense of the action.

*Bourget,* 48 F.R.D. at 33 (internal citation omitted) (quoting *Shapiro v. Allstate Ins. Co.,* 44 F.R.D. 429, 430 (E.D. Pa. 1968)). Judge Timbers' finding in *Bourget* is equally applicable in this case. Plaintiff also demonstrated that the documents are relevant to her claims as Liberty asserts that it acted in good faith when declining to accept the offer of compromise in the underlying action with the insured. ECF No. 38 at 32-33 (Liberty's responses to Interrogatory Nos. 3 and 5). The Court

finds that Plaintiff has made a showing of good cause for the disclosure of the information sought in Liberty's claims file as listed in the July 7 and July 25 Privilege Logs.

Judge Timbers further found that the attorney-client and work product protection may be waived by the subrogee.[3] *Bourget,* 48 F.R.D. at 33 ("In this situation, plaintiff may waive the attorney-client privilege, and has done so, just as the insured would be able to waive it."); *see also* ECF No. 40 at 6 (citing *Woodruff v. Am. Fam. Mut. Ins. Co.,* 291 F.R.D. 239, 244 (S.D. Ind. 2013) ("Indeed, a plethora of cases have held that no attorney-client privilege can be asserted against an insured *or an assignee of an insured* in its action against an insurance company with respect to materials prepared as part of the insured's defense in the underlying action.") (internal quotation marks and citation omitted) (citing cases) (emphasis added); *Silva v. Fire Ins. Exchange,* 112 F.R.D. 699, 699-700 (D. Mont. 1986) ("The time-worn claims of work product and attorney-client privilege cannot be invoked to the insurance company's benefit where the only issue in the case is whether the company breached its duty of good faith in processing the insured's claim."); *Chitty v. State Farm Mut. Auto. Ins. Co.,* 36 F.R.D. 37, 40 (E.D.S.C. 1964) (insured brought a bad faith action alleging failure to settle an earlier suit against the insured in which a verdict was rendered in excess of liability insurance coverage. The Court found that Plaintiff showed good cause for the production, the information requested was relevant and there was no attorney-client work product privileges."); *Wiseman v. Progressive Paloverde Ins. Co.,* No. 8:21-cv-02743 (TPB)(AAS), 2023 WL 2162374, at *1 (M.D. Fla. Feb. 22, 2023) ("Florida courts have consistently held that the

---

[3] In this case, Plaintiff's subrogation right arises out of Conn. Gen. Stat. § 38a-321. ECF No. 25 (Amend. Compl.) (Counts One through Four). In *Bourget*, the Court applied a predecessor statute, Conn. Gen. Stat. § 38-175. "Aside from the transfer from General Statutes § 38-175 to § 38a-321 in 1991, this statute has remained unchanged since 1949." *Sullivan v. W. World Ins. Co.*, No. FBTCV186074718S, 2019 WL 994319, at *2 n.2 (Conn. Super. Ct. Jan. 24, 2019); *Altschuler v. Utica First Ins. Co*., No. CV-21-6112908-S, 2023 WL 8741043, at *4 (Conn. Super. Ct. Dec. 12, 2023) (General Statute § 38-175 is now codified as § 38a-321).

plaintiff in a third-party bad-faith action against an insurance company for failure to settle for policy limits *is entitled to the entire litigation file of the insured's counsel* from the inception of the lawsuit until the date the judgment was entered in the underlying action.") (emphasis added). The Court finds that the attorney-client and work product protection, even if applicable do not bar the Plaintiff, the subrogee, from access to the documents listed on the July 7 and 25, 2025 Privilege logs, pursuant to Conn. Gen. Stat. § 38a-321.

The Court considered the cases cited by Liberty and finds them distinguishable on the facts. *See Home Ins. Co. v. Aetna Life & Cas. Co.,* 235 Conn. 185, 195 (1995) (interpreting Conn. Gen. Stat. of § 52–146f(5), and declining to "authorize a subrogee to obtain a subrogor's confidential psychiatric records in a subrogation action wherein the subrogor is not a party[.]"); *Mason v. Liberty Mut. Ins. Co.,* No. CV166056972, 2017 WL 3623474, at *6 (Conn. Super. Ct. July 18, 2017) (interpreting Conn. Gen. Stat. § 38a–321, finding that the assignment of a legal malpractice claim to a judgment creditor on behalf of a third-party insured was beyond the scope of the statute). Neither *Home Ins. Co.* nor *Mason* alter Judge Timbers' decision in *Bourget*. Specifically, this case involves a subrogee's rights under an insurance contract with defendant where the plaintiff is stepping into the shoes of the insured. The insured would have a right to the insurer's claim file to enforce his rights under the insurance contract, so does the subrogee.

Plaintiff's Motion to Compel documents listed on Defendant's July 7 and 25, 2025 privilege logs is GRANTED. Defendant shall turn over the documents to Plaintiff within fourteen (14) days of this Order.

**CONCLUSION**

For the reasons stated, Plaintiff's Motion to Compel is GRANTED in part and MOOT in part. **ECF No. 34.**

This is not a recommended ruling. This ruling and order is a "determination of [a] nondispositive motion[] . . . relating to discovery." D. Conn. L. Civ. R. 72(C)(2). As such, it is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2. It is an order of the Court unless reversed or modified by the District Judge in response to a timely objection under Local Rule 72.2(a).

*/s/ Maria E. Garcia, U.S.M.J.*
Hon. Maria E. Garcia
United States Magistrate Judge
